UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CASE NO: 15-5555

UNITED STATES OF AMERICA                    PLAINTIFF/APPELLEE

v.

DURAN WOMBLES                              DEFENDANT/APPELLANT

---

**ON APPEAL FROM**

**DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY**

**CENTRAL BRANCH AT LEXINGTON**

**CASE NO. 5:14-CR-00030-1**

---

**REDACTED BRIEF OF THE APPELLANT**
**ORAL ARGUMENT REQUESTED**

---

SUBMITTED BY:

s/ EDWARD M. THOMPSON
THOMPSON LAW OFFICE
3131 CUSTER DRIVE
SUITE 5
LEXINGTON, KY 40517
859-280-2222
CJA COUNSEL FOR APPELLANT,
DURAN WOMBLES

## DISCLOSURE OF CORPORATE AFFILIATION
## AND FINANCIAL INTEREST

       Pursuant to Rule 25 of the Local Rules of the United States Court of Appeals for the Sixth Circuit, Duran Wombles makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? No.

3. If the answer is YES, list the identity of such corporation and the nature of the financial interest: N/A

s/EDWARD M. THOMPSON
THOMPSON LAW OFFICE
ATTORNEY FOR DURAN WOMBLES

DATE 11/2/2015

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT.................................................................i

TABLE OF CONTENTS........................................................................................ii

TABLE OF CASES & AUTHORITIES..........................................................iii-iv

STATEMENT OF ORAL ARGUMENT ..........................................................v

STATEMENT OF APPELLATE JURIDICTION.............................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE........................................................................3-8

SUMMARY OF ARGUMENT...............................................................................9

STANDARDS OF REVIEW.................................................................................10

ARGUMENT:
     I.   The District Court was clearly erroneous in finding
        the Defendant was a "manager" subject to a sentencing
        enhancement pursuant to U.S.S.G. 3b 1.1(b)...................11-18

     II.  The District Court abused its discretion when it
        sentenced the Defendant to a period of two-hundred
        (200) months incarceration despite the numerous
        factors that were heavily weighted in the Defendant's
        favor so as to warrant a downward departure..................19-22

CONCLUSION.....................................................................................................23

TYPE VOLUME LIMITATION CERTIFICATION........................................24

CERTIFICATE OF SERVICE............................................................................25

DESIGNATION OF COURT DOCUMENTS....................................................26

# TABLE OF AUTHORITIES

**CASES**                                                                                **Pg.**

**United States Court of Appeals**

Gall v. United States,
128 S.Ct. 586, 594(2007)........................................................................20

United States v. Are,
590 F.3d 499 (7th Cir. 2009)................................................................17

United States v. Bolden,
622 F.3d 988 (8th Cir. 2010)................................................................18

United States v. Booker,
543 U.S. 220 (2005)........................................................ 9, 19, 20

United States v. Canania,
532 F.3d 764 (8th Cir. 2008)................................................................18

United States v. Curb,
626 F.3d 921 (7th Cir. 2010)................................................................17

United States v. Doe,
613 F.3d 681 (7th Cir. 2010)........................................................17, 18

United States v. Elledge,
344 F.App'x 119, 126-127 (6th Cir. 2009)........................................16, 17

United States v. Feinman,
930 F.2d 495, 500 (6th Cir. 1991)................................................................12

United States v. Fernandez,
559 F.3d 3030 (5th Cir. 2009)................................................................18

United States v. Gaitan-Acevedo,
148 F.3d 577 (6th Cir. 1998)................................................................16

United States v. Munoz,
233 F.3d 410 (6th Cir. 2000)................................................................17

United States v. Vallar,
635 F.3d 271 (7th Cir. 2011)................................................................17

United States v. Ward,
506 F.3d 468 (6th Cir. 2007)................................................................18

United States v. Washington,
127 F.3d 510 (6th Cir. 1997)..............................................................................15

**STATUTES AND CONSTITUTIONAL PROVISIONS**

18 U.S.C. §922(g)(1)..............................................................................................3

18 U.S.C. §3553(a)................................................................................7, 10, 21

21 U.S.C. §841 (a)(1).....................................................................................3, 11

21 U.S.C. §846........................................................................................................3

**SECONDARY SOURCES**

United States Sentencing Guidelines...........................................................12, 14

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Counsel for the Appellant believes that oral argument is necessary in this case. Defendant request an opportunity to articulate his position relative to the reasonableness of the enhancement and sentence and to answer any questions the Court may have at oral argument.

# JURISDICTIONAL STATEMENT

The Defendant was convicted in United States District Court in the Eastern District of Kentucky at Lexington and sentenced to a period of two-hundred (200) months for conspiracy to distribute controlled substance as well as an additional one-hundred twenty months (120) for being a felon in possession of a firearm, 5:14-CR-00030-DCR-REW-1. It is the sentence of imprisonment as well as an enhancement to his base offense level that the Defendant now appeals. The jurisdiction is therefore vested in the United States Court of Appeals for the Sixth Circuit as his matter of right appeal to this Court.

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

I.  Whether the District Court was clearly erroneous in finding
the defendant was a "manager" subject to a sentencing
enhancement pursuant to U.S.S.G. 3b 1.1(b).

II. Whether the district court abused its discretion when it
sentenced the defendant to a period of two-hundred (200)
months incarceration despite the numerous factors that were
heavily weighted in the defendant's favor so as to warrant
a downward departure.

**<u>STATEMENT OF THE CASE</u>**

From approximately October 1, 2013 through until March 7, 2014, Mr. Wombles was engaged, as part of a conspiracy, in the sale and distribution of heroin. (Pre-sentence Investigation Report, RE 226, Page ID# SEALED.) During the course of this time, the Defendant, along with his girlfriend, Lauren Summers, sold the narcotic to support their drug habit. <u>Id.</u> The Defendant and his girlfriend were low level distributers. According to Mr. Wombles' sister and co-Defendant, Tamara Wombles, she was the person who dealt with the two individuals who were suppliers and leaders of the arrangement – Jesus Lizarraara-Estudillo, and Israel Gonzales-Pasos, also co-Defendants. <u>Id.</u>

On March 6, 2014, the Defendant was arrested along with his girlfriend, Ms. Summers. At that time, the Defendant provided information which led to the arrest of his sister, in turn who provided information which led to the arrest of the two leaders. <u>Id.</u> On April 3, 2014, Mr. Wombles was indicted with one count under 21 U.S.C. §846, conspiracy to distribute heroin, 14 counts under 21 U.S.C. §841(a)(1), possession with intent to distribute heroin related to individual sale transactions and a single transaction under 18 U.S.C. §922(g)(1), felon in possession of a firearm for possessing and selling a firearm during an

undercover transaction. (Indictment, RE 11, Page ID# 98-106). On June 9, 2014 the Defendant appeared for re-arraignment to enter a plea of guilty to Counts 1 and 6 of the indictment. (Criminal Minutes, RE 26, Page ID#151-152).

On August 7, 2014 the office of probation and parole issued a pre-sentence investigation report[1] which calculated a base offense level of thirty (30) pursuant to the United States Sentencing Guidelines (USSG) §2D1.1(c)(4) for the Defendant's conduct in conspiring with others to possess heroin with intent to distribute. (Pre-sentence Investigation Report, RE 226, Page ID# SEALED.) Additionally, the Defendant was given two enhancements to his guideline calculation:

- A two (2) level enhancement pursuant to USSG §2D1.1(b)(1) related to the sale of a .25 caliber semi-automatic handgun during a drug transaction which occurred on December 12, 2013. As such, this enhancement was for the Defendant possessing a dangerous weapon during a drug transaction. (Pre-sentence Investigation Report, RE 226, Page ID# SEALED).

---

[1] Several revised pre-sentence investigation reports were issued in this matter; specifically on August 26, 2014, November 26, 2014, March 17, 2015, and May 20, 2015. The report entered in the record was the report finally issued on May 20, 2015.

- A three (3) level enhancement as a "supervisor" in the criminal activity pursuant to §3B1.1(b). This enhancement was due to his co-Defendant and girlfriend, Ms. Summers having facilitated two (2) heroin sales for the Mr. Wombles. (Pre-sentence Investigation Report, RE 226, Page ID# SEALED). It is this enhancement to which the Defendant is currently appealing.

Prior to sentencing Defendant's Counsel learned of the horrific details of his client's childhood. While it is certainly not unusual for a criminal defendant to have a "rough" upbringing, Mr. Wombles childhood was akin to a horror novel. He suffered all manner of abuses in which a child could suffer and ultimately was "sold" to his mother's drug dealer. Prior to sentencing the following information was disclosed to the Court related to the Defendant's horrific childhood and upbringing:

- The Defendant and his sister were the children of heavy full time debilitated drug addicts. (Pre-sentence Investigation Report, RE 226, Page ID# SEALED.)
- The Defendant's mother was a prostitute who would bring the children with her to meet her "Johns." While engaged in intercourse, with her children in the same room, she required her children to steal from the pockets of the "Johns." <u>Id.</u>

- When the Defendant was approximately ten (10) years old he and his sister were "sold" to the Defendant's mother's drug dealer in exchange for a steady supply of narcotics to supply her habit. Both the Defendant and his sister were sexually abused by the drug dealer and would be beaten if they refused his sexual advances. Id.

- The dealer threatened the Defendant and his sister, on the occasions they would visit family, if they spoke of the abuse. To demonstrate his sincerity he would kill small animals in their presence. Id.

As such, August 20, 2014, the Defendant, via counsel, notified Duran's probation and parole officer of his objection to the "supervisor" enhancement pursuant to USSG §2D1.1(b)(1). Further, counsel filed a formal objection to the enhancement on August 28, 2014. (Objection to Presentence Investigation Report, RE 78, Page ID#287-293). This objection was subsequently amended on March 17, 2015. (First Amended Objection to Pre-Sentence Report, RE 167, Page ID# 581-587.) In the Objection, counsel pointed out that both Duran and Ms. Summers were drug addicts and their involvement in the drug transactions were more in the nature of a partnership than in a supervisor/subordinate arrangement. Additionally, both parties admitted to being in a romantic relationship. As such, there

was no 'supervision' but, instead, an addict girlfriend doing her addict boyfriend a favor.

As Defense counsel will outline more below, a review of the pertinent case law as it related to "supervisor" designations generally show the "supervisor" exercising far greater authority and/or control over his subordinate. Further, none of the "ear marks" of a supervisory capacity, as outlined in the commentary of the guidelines, existed in the present case.

At sentencing on May 20, 2015, the Court heard argument related to the objection to the "supervisor" role and allocution as to why a sentence pursuant to 18 U.S.C. §3553(a) resulted in a sentence below the advisory guideline range. The Court, at sentencing:

- Denied Defendant's objection to the supervisor enhancement.
- Stated, on the record that the Defendant's upbringing was the "worst he had ever seen" yet found the Defendant to still fall within the "heartland" of the guideline range.[2]

---

[2] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

On May 20, 2015, despite all argument and evidence in support of sustaining the objection to the enhancement and giving Duran a sentence reduction for his assistance, the Court sentenced Duran to two-hundred (200) months on the Conspiracy count and one-hundred twenty (120) months on the Felon in Possession charge.[3] (Judgment Upon Plea of Guilty, RE 224, Page ID# 754-759; *see also*, Criminal Minutes, RE 220, Page ID# 743). It is from this Judgment that the Defendant now appeals.

se note these sentences were to run concurrently.

## SUMMARY OF ARGUMENT

The District Court was clearly erroneous when it found Mr. Wombles to be a manager in the criminal enterprise under the guidelines. The Court believed that Mr. Wombles "directed" other defendants in such a manner to rise to the level of a manager despite the clear evidence against this enhancement. Mr. Wombles base offense level was raised (3) points as a result of this erroneous enhancement. A review of similar cases establishes that Mr. Wombles conduct did not rise to the level of a manager and no enhancement should have been made.

Further, The District Court abused its discretion when it imposed a sentence of two-hundred (200) months despite the fact that Mr. Wombles case was clearly not a "heartland" case for which the guidelines will normally apply. The Court has wide discretionary authority in sentencing post United States v. Booker, 543 U.S. 220 (2005). Mr. Wombles was unquestionably a Defendant whose characteristics and familial history warranted a downward variance in sentencing. Further, these factors were discussed in detail in Defense Counsel's Pre-Sentence memorandum and at sentencing. As such, the Court was well aware of these factors yet simply chose to not consider them.

## STANDARD OF REVIEW

The standard of review for a District Court's determination regarding a defendant's role in an offense is clearly erroneous.

The standard of review for the District Court's failure to meaningfully apply all 18 U.S.C. 3553(a) factors is clearly erroneous.

**I.** The District Court was clearly erroneous in finding the Defendant was a "manager" subject to a sentencing enhancement pursuant to U.S.S.G. 3b 1.1(b).

Duran Wombles was a drug addict. His drug of choice was heroin and it had a nasty hold on him. His girlfriend, Lauren Summers, was also a hopeless drug addict. Together they sold drugs simply to supply their voracious habit. As is par for the course, on just a few occasions when Duran was unavailable to deliver drugs, Lauren did it for him. She did it as a girlfriend doing a favor for a boyfriend, not an employee acting on behalf of her employer or a drug mule acting in fear of retribution. Yet, to Defense Counsel's surprise, when the Pre-Sentence Investigation Report (hereafter "PSR") was received, it stated that Mr. Wombles should receive a three point adjustment to his offense level.

Per the PSR, this enhancement specifically related to his violation of 21 U.S.C. §841(a)(1), conspiracy to distribute an illegal substance and was based upon the belief that Duran was acting in a "supervisory" capacity.[4] Pursuant to Section 3B1.1(b) of the guidelines: "[b]ased on the defendant's role in the offense, increase the offense level as follows: (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more

---

[4] Presentence Investigation Report, RE 26, Page ID# Sealed.

participants or was otherwise extensive, increase by three (3) levels."

The commentary to this section notes that factors a court should consider in determining whether section 3B1.1 applies including, "the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."[5] The government bears the burden of establishing the factors supporting the enhancement by a preponderance of the evidence.[6] The District Court obviously believed the United States to have met its burden; however, a review of the case itself does not support the District Court's belief.

The basis for the enhancement appears to be based on a select few transactions. Specifically, it appears that Lauren Summers, co-defendant and former girlfriend of Duran, stated during her PSR interview that she, "on at least two occasions" delivered drugs on behalf of Duran and returned the money from the transaction to Duran. A review of the discovery reflects only one time was a drug sale arrangement negotiated with Duran for which Lauren

---

[5] U.S.S.G. § 3B1.1, comment 4.

[6] <u>United States v. Feinman</u>, 930 F.2d 495, 500 (6th Cir.1991).

appeared.[7]

Simply put, this adjustment is not supported by the actual
facts of this case or, the case law that delve more deeply into
what makes someone a "supervisor" for guideline purposes. In fact,
none of the factors are met here. First, there is no indication
that Duran had anymore "decision making authority" than Lauren.
Again, they were addicts who would simply arrange "buys" from
their clients. Certainly they both arranged the date and times of
these buys throughout the lifetime of the conspiracy.

Second, with regards to the nature of participation in the
commission of the offense there was nothing in the record to
indicate that the parties' participation was anything less than
equal. Again, Ms. Summers merely mentioned that she had sold drugs
when Duran was unavailable a time or two. Covering for a "co-drug
dealer" twice in six (6) months does not establish a larger level
of participation on Mr. Wombles part. The record establishes they
generally did deals together and, very infrequently, they
participated separately.

Similarly, there is simply no evidence to fit the third
element, "the recruitment of accomplices." Ms. Summers was never
asked, nor did she ever, recruit others to engage in their
criminal enterprise. In fact, other than the two main suppliers,

---

[7] See Wombles Pre-Sentence Report, RE: 26, SEALED.

the "enterprise" consisted only of Mr. Wombles, his lover and his sister. Further, Ms. Summers made no statements that indicated that she shared any less in the fruits of the enterprise. As such, the fourth factor is also not met. Again, these were co-addicts sharing equally in the drugs and lifestyle.

Finally, the next two factors, "the degree of participation in planning or organizing the offense" and "the nature and scope of the illegal activity"[8] all are unquestionably not met by the facts of the instant case. Duran and Lauren both talked to their "clients" and set up the deals barring the "one or two" times Lauren was alleged to have met a client on Duran's behalf. As such, they seemed to share the general planning and organizing of the sale. Similarly nothing about the nature and scope of the activity establishes a supervisory role by Duran.

The reality is the government hung their hat entirely on factor seven (7), "the degree of control and authority exercised over others."[9] On one occasion, when Duran was simply unavailable, he asked his then girlfriend to handle a drug transaction. For this, the government is attempting to give him a three (3) point enhancement. This falls more in line with a favor for a boyfriend then a directive by a "supervisor." Duran did not supervise Lauren, he dated her and, like any boyfriend, asked her to do a

---

[8] U.S.S.G. § 3B1.1, comment 4.
[9] Id.

quick favor for him one day, a favor that certainly does not warrant a three (3) point enhancement.

Further, under the *Commentary, Application Notes* for USSG §3B1.1, it states the reason for the enhancement is because "persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate." Here, there is no proof that Duran profited any more than Lauren. Lauren and Duran were in the nature of partner-addicts who shared in the fruits of their labor.

There is no disputing that Lauren and Duran were in a romantic relationship during the timeframe of the indictment and, both were significantly addicted to heroin. Further, although Duran may have been the contact for the confidential informant, routinely Lauren and Duran would show up for the transaction together. There is no evidence that Duran and Lauren had anything other than co-equals in these sales.

The PSR cited to U.S. v. Washington[10] as a support for their assertion that Duran was a supervisor of Lauren. While it is true that in Washington the Defendant was given a "supervisor enhancement" for his role in crack cocaine sales where his girlfriend was involved, this enhancement was given due to the

---

[10] U.S. v. Washington, 127 F.3d 510 (6th Cir. 1997).

15

fact that Washington almost exclusively used his girlfriend as his drug courier. Washington utilized her in an effort to avoid having to "do the job" himself.    The record is clear, however, that Lauren only acted as a courier once for Duran and it was simply due to his unavailability.    As such, <u>Washington</u> simply does not apply and is easily distinguishable.

Similarly, the PSR also directs this Court to <u>U.S. v. Gaitan-Acevedo</u>.[11]    In <i>Gaitan-Acevedo</i>, however, the enhancement was granted due to the Defendant processing drugs in one state and providing them to couriers who would travel nationwide with the drugs.  The Defendant supervised a large scale, multi-state drug operation.  This, unquestionably, is a clear case of supervision; Duran's case facts do not even resemble those in <u>U.S. v. Gaitan-Acevedo</u> and it is almost shocking that the United States would have relied upon such an easily distinguishable case.  Duran was a small town drug dealer who sold drugs with his addict girlfriend, not the supervisor of a large drug enterprise.

Finally, the PSR boldly cites <u>U.S. v. Elledge</u>[12] stating, "[u]nder the caselaw (sic) of this Circuit, recruiting individuals to complete narcotics deliveries, even on a one time or temporary basis, constitutes supervisory conduct that warrants a §3B1.1 enhancement."  What the PSR, of course, does not reveal is that

---

[11] <u>U.S. v. Gaitan – Acevedo</u>, 148 F.3d 577 (6th Cir. 1998).
[12] <u>U.S. v. Elledge</u>, 344 F.App'x 119, 126-127 (6th Cir. 2009).

the "one time delivery" in Elledge was a cross country delivery of over two hundred (200) pounds of marijuana from Phoenix, Arizona to Detroit, Michigan. This "one time" delivery took place over numerous days requiring over-night stays in the various states along the way. Duran simply asked Lauren to drive across town to facilitate a delivery, a transaction that can be assumed to have taken under an hour. The <u>Elledge</u> case does not fit the circumstances of this case and, is clearly distinguishable.

Simply put, Duran was not a supervisor or manager to Lauren. For the manager/supervisor role to apply the participant must direct the activities of others.[13] Defendants have been found to be supervisors where they worked out a deal with the informant and made arrangements for the courier to deliver the drugs[14], recruited a driver and negotiated the price to transport the drugs from Texas to Indiana[15], lectured and disciplined other conspirators about a failed drug transaction[16], oversaw the receipt and distribution of drugs[17], supplied others with drugs to sell around a housing project[18], ran a drug organization including managing the financial side of the organization while the leader

---

[13] <u>Id.</u> Defendant was responsible for processing all the marijuana in California and gave one conspirator directions as to where delivery was to be made.
[14] <u>U.S. v. Munoz</u>, 233 F.3d 410 (6th Cir. 2000).
[15] <u>U.S. v. Doe</u>, 613 F.3d 681 (7th Cir. 2010).
[16] <u>U.S. v. Are</u>, 590 F.3d 499 (7th Cir. 2009).
[17] <u>U.S. v. Vallar</u>, 635 F.3d 271 (7th Cir. 2011).
[18] <u>U.S. v. Curb</u>, 626 F.3d 921 (7th Cir. 2010).

was in prison[19], managed the business of the drug trade while her boyfriend handled the "cooking of methamphetamine[20], recruited a participant and directed the activities to a co-conspirator[21], coordinated shipments of drugs, hired drivers and decided the amount that a co-conspirator would pay to buy drugs[22] and where a defendant directed delivery of crack twenty times for the defendant.[23]

Here, Lauren and Duran were working together to support their habit; theirs was a partnership of addiction. Of the recorded transactions, they came to together for three of them, Duran came alone to five of them and Lauren showed up alone at one. While Duran may have arranged the meeting, Lauren had been involved in enough of the transactions that it would be unfair to say that Duran "directed" Lauren to the exchange. If anything, Duran and Lauren were operating at the direction of Tamara Wombles. In fact, at the time of arrest, Duran advised law enforcement that he and Lauren were operating at Tamara's direction.

[19] U.S. v. Fernandez, 559 F.3d 3030 (5th Cir. 2009).
[20] U.S. v. Canania, 532 F.3d 764 (8th Cir. 2008).
[21] U.S. v. Bolden, 622 F.3d 988 (8th Cir. 2010).
[22] U.S. v. Doe, 613 F.3d 681 (7th Cir. 2010).
[23] U.S. v. Ward, 506 F.3d 468 (6th Cir. 2007).

**II.** <u>The District Court abused its discretion when it sentenced the Defendant to a period of two-hundred (200) months incarceration despite the numerous factors that were heavily weighted in the Defendant's favor so as to warrant a downward departure.</u>

Duran Wombles was sentenced to two-hundred (200) months and one-hundred twenty (120) months consecutively for the drug and gun charges. It is true that Mr. Wombles sentencing guideline range was for two-hundred ten (210) to two-hundred sixty-two (262) months and unquestionably two-hundred (200) months is less than the "guideline range."



In 2005, our venerable Supreme Court handed down <u>United States v. Booker</u>, 543 U.S. 220 (2005). <u>Booker</u> renders the

Sentencing Guidelines advisory in all cases.  It allows District Judges to not be locked into a sentence for a criminal defendant simply because "the guidelines say so."  In many senses, <u>Booker</u> reminds Federal Judges to truly sentence on a case by case basis and to look deeper into each Defendant before them.  Simply put, <u>Booker</u> allows Judges much greater authority in sentencing than they previously had.  Duran Wombles is the kind of Defendant, in this counsel's opinion, that <u>Booker</u> has in mind when it makes the guidelines advisory.

"[A]ppellate review of sentencing decisions is limited to determining whether they are `reasonable.'" <u>Gall v. United States</u>, 128 S.Ct. 586, 594(2007). "Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard." <u>Id.</u> at 597. The appellate court "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, **treating the Guidelines as mandatory**, **failing to consider the § 3553(a) factors**, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." <u>Id.</u> (Emphasis added).

In the instant case Mr. Wombles asserts there was a procedural error in that the District Court Judge did not meaningfully consider any of the 3553(a) factors that would have

weighted in his favor.  Please note, Mr. Wombles does not assert that the court below did not fully explain its reasoning behind the sentence or, give his counsel adequate time to explain his position on a downward variance.  Instead, Mr. Wombles asserts the reasoning behind the sentence itself was made with little thought to many of the 18 U.S.C. 3553(a) factors.

Pursuant to 18 U.S.C. 3553(a):

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines… …

(5) any pertinent policy statement—

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Defense counsel is aware that some of the factors may weigh in the government's favor. However, in the instant case, as has been discussed, the first factor weighs so heavily in Mr. Wombles favor that it should not have been ignored. Mr. Wombles "childhood," if it can even be called that, was full of nothing but sadness, abuse and indignity. He was not encouraged to go to school or develop a job skill. Instead, he was encouraged to cheat, steal and sell drugs as his way "up" in life. As many of us do, he simply followed in the footsteps of his family. In this he had little choice.

Mr. Wombles understands his crimes and subsequent sentences are not the type many would look upon with mercy. However, he asks this Court to realistically look at the life he was given. Mr. Wombles understands he must pay for his crimes but, he simply asks that he be given the chance for a reduction in sentence so he can begin to build a life he is proud of before it's too late. As such, he respectfully requests this Court remand his case for re-sentencing.

## CONCLUSION

Wherefore, the Defendant prays that the Court remand this matter back with instructions to the District Court to impose a sentence that does not utilize a three (3) point enhancement for a "supervisory" role and that gives due consideration to specific nature and characteristics of this particular Defendant.

Respectfully Submitted,

**s/** <u>EDWARD M. THOMPSON</u>
THOMPSON LAW OFFICE
219 North Upper Street
LEXINGTON, KY 40507
859-280-2222
CJA COUNSEL FOR
APPELLANT, DURAN WOMBLES

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this Brief complies with the type limitations of these Rules.

1.  Exclusive of all the exempted portions in FRAP 32(a)(7)(B)(i) and (iii), the Brief contains 4,384 words.

2.  The Brief has been prepared in 12-point Courier New type face, using Microsoft Word 2010. At the Courts' so request, the undersigned will provide an electronic version of the Brief and/or a copy of the word or line printout.

3.  The undersigned understands the material misrepresentation in completing the Certificate of the Fed. R. App. P. 32(a)(7)(B)(C) in Sixth Rule 32(a), may result in striking the Brief and imposing sanctions against the person for signing it.

s/<u>EDWARD M. THOMPSON</u>
<u>EDWARD M. THOMPSON</u>

## **FILING AND MAILING CERTIFICATE**

    In compliance with Fed. R. App. P Rule 25 and L.R. 25, I hereby certify that on November 2, 2015, I filed this corrected brief with the Clerk's Office in the United States Court of Appeals for the Sixth Circuit, the original electronic Brief. Notice of this filing will be sent by operation of the Court's electronic filing system, the Honorable Charles P. Wisdom, United States Department of Justice and Assistant United States Attorney.

*s*/ EDWARD M. THOMPSON
THOMPSON LAW OFFICE
219 North Upper Street
LEXINGTON, KY 40507
859-280-2222

UNITED STATES COURT OF APPPEALS
FOR THE SIXTH CIRCUIT
CASE NO. 15-5555

**UNITED STATES OF AMERICA**        **Plaintiff-Appellee**
**v.**

**DURAN WOMBLES**        **Defendant–Appellant**

**DESIGNATION OF DISTRICT COURT DOCUMENTS**

| RECORD ENTRY & PAGE RANGE | DESCRIPTION OF DOCUMENT |
|---|---|
| | **FOR CASE NUMBER 5:14-CR-0030** |
| 11 PAGE ID# 98-107 | Indictment |
| 26 PAGE ID# 151-152 | Criminal Minutes - Arraignment |
| 78 PAGE ID# 287-293 | Objection to Pre-Sentence Investigation Report |
| 167 PAGE ID# 581-587 | First Amended Objection to Pre-Sentence Investigation Report |
| 220 PAGE ID# 743 | Criminal Minutes - Sentencing |
| 224 PAGE ID# 754-759 | Judgment in a Criminal Case |
| 226 SEALED | Pre-Sentence Investigation Report |